**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **D-JUAN OWENS,** | ) | |
| | ) | **Case No. 13 CV 7568** |
| **Plaintiff,** | ) | |
| | ) | **Judge Dow** |
| **v.** | ) | |
| | ) | **Magistrate Judge Brown** |
| **P.O. ELLISON, P.O. KELLY,** | ) | |
| **Individually and the CITY OF** | ) | **JURY DEMAND** |
| **HARVEY, a municipal** | ) | |
| **corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S MOTIONS *IN LIMINE***

NOW COMES Plaintiff D-JUAN OWENS ("Owens" or "Plaintiff"), by and through his attorneys, GREGORY E. KULIS and JOSHUA S. PATRICK of GREGORY E. KULIS & ASSOCIATES, LTD., and respectfully submits the following motions *in limine*.

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO BAR ANY ARGUMENTS**
**APPEALING TO THE JURY AS TAXPAYERS**

As the Seventh Circuit has repeatedly confirmed, arguments that appeal to jurors' pecuniary interests as taxpayers are "of course" generally improper. *See Moore ex rel. Estate of Grady v. Tujela*, 546 F.3d 423, 429 (7th Cir. 2008) (declaring the following argument improper: "The city is not a random amorphous entity. It's you. We're talking about tax dollars here."). All such argument should be barred.

**PLAINTIFF'S MOTION IN LIMINE NO. 2 TO BAR NON-PARTY WITNESSES**
**FROM THE COURTROOM PRIOR TO TESTIFYING**

Plaintiff hereby moves to exclude non-party witnesses from being present in the courtroom prior to their testimony.

## PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO BAR EVIDENCE OF PRIOR BAD ACTS AND INFORMATION NOT KNOWN TO DEFENDANTS AT THE TIME OF THE ENCOUNTER

The Seventh Circuit has frequently warned about the danger of justifying violations of important constitutional rights by portraying victims as bad people. *Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990). The Federal Rules of Evidence reflect these same concerns by providing clear prohibitions against the introduction of prior bad acts and any uncharged misconduct, unless it is relevant and significant to questions that the jury is being asked to consider. *See e.g.*, FRE 403, 404(b), 609. Specifically, Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

In this case, Plaintiff seeks to bar any references to (1) any of the Plaintiffs' prior arrests that did not result in conviction; (2) any of the Plaintiff's criminal convictions; (3) any history of illegal drug use by the Plaintiff; and (4) any alleged prior gang affiliation of the Plaintiff.

### Arrests Without Conviction Are Inadmissible

It is well-settled that arrests that do not lead to convictions are generally inadmissible. *See Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) (law is clear that a party's prior arrest record is inadmissible; even indirect reference to a party's past arrest is improper); *Brandon v. Village of Maywood*, 179 F. Supp 2d 847, 853-55 (N.D. Ill. 2001) (carefully considering and rejecting all arguments for admission of arrest record — such as "bias" or damages — because prejudice outweighs probative value, especially where officers did not know about the past arrest at the time of the incident). Evidence of D-Juan Owens' prior arrests is nothing more than prior bad act evidence which is not

admissible under the Federal Rules of Evidence. *See Gregory v. Oliver*, 2003 WL 1860270, at *1 (N.D. Ill. April 9, 2003) ("Arrests that have not lead to convictions are classic candidates for exclusion under [F.R.E.] 404(b)"); *Blessing v. Kulak*, 1988 WL 67637, at *1 (N.D. 111. June 22, 1988) ("The use of the evidence of prior arrests, despite defendants' arguments, is in the manner of demonstrating that [he] had a propensity for committing burglary [and is thus] inadmissible under Rule 404(b)"); *see also Earl v. Denny's, Inc.*, 2002 WL 31819021, at *8 (N.D. Ill. Dec. 13, 2002) ("[A] jury may deny plaintiff a verdict and an award, not because it doubts [plaintiff's] veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question. That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent"); *Gora v. Costa*, 971 F. 2d 1325, 1331 (7th Cir. 1992) ("courts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her.").

Such evidence is not probative of any issue in this case, would waste the jury's time, and is likely to confuse and/or mislead the jury. Moreover, Plaintiff's Complaint sounds in excessive force/failure to intervene and a *Monell* custom, practice and policy claim. As such, there is no false arrest or malicious prosecution claim whereby prior arrests without conviction might hypothetically be relevant to damages. For these reasons, any reference to Plaintiffs' prior arrests should be barred pursuant to FRE 402, 403 and 404.

### Inadmissible Prior Convictions

Defendants should be barred from referencing any of D-Juan Owens' prior criminal convictions other than the conviction resulting from the incident giving rise to this lawsuit. As a general matter, FRE 609(a)(1) permits impeachment of a witness by

evidence of the conviction for a crime punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, subject to a balancing of probative value and prejudicial effect pursuant to FRE 403. Subsection B, however, cautions that evidence of a conviction from which ten years have elapsed since the date of conviction or date of release from confinement is _only_ admissible "if its probative value, supported by _specific facts and circumstances_, substantially outweighs its prejudicial effect." FRE 609(b)(1) (emphasis added).

Discovery undertaken in this matter indicates that, other than the aforementioned charges stemming from his encounter with Defendants, the Plaintiff has been convicted of the following offenses on or about the following dates (within FRE 609(a)'s ten year window) resulting in the following sentences:

- <u>May 18, 2011</u> – driving on a suspended/revoked license pursuant to 625 ILCS 5/6-303(a), sentenced to 12 months in the Illinois Department of Corrections ("IDOC").

- <u>May 19, 2010</u> – misdemeanor battery pursuant to 720 ILCS 5/12-3(A)(1), sentenced to 30 days in the Cook County Department of Corrections.

- <u>October 13, 2009</u> – possession of a controlled substance pursuant to 720 ILCS 570/402(c), sentenced to 2 years in IDOC.

- <u>February 6, 2009</u> – possession of cannabis between 30-500 grams pursuant to 720 ILCS 550/5(D), sentenced to 2 years probation.

- <u>October 29, 2007</u> – possession of cannabis between 30-500 grams pursuant to 720 ILCS 550/4(D), sentenced to 2 years in IDOC

From the outset, both the May 2011 and May 2010 convictions were misdemeanor offenses and neither was punishable by more than one year of imprisonment. As such, they do not meet the criteria under Rule 609(a) and would only be admissible for impeachment purposes if their probative value outweighs the prejudicial effect. Neither driving on a suspended/revoked license nor misdemeanor

4

battery are offenses involving fraud, theft, or dishonesty. Furthermore, neither such offense is at all factually similar to the underlying dispute herein. The only purpose that would be served by introducing such evidence would be to cast aspersions upon the Plaintiff's character. Such is clearly not sufficient grounds for admissibility under Rule 609.

That, then, leaves the three narcotics-related offenses from 2007 and 2009. Although all three are felony convictions occurring within the last ten years, and as such, admittedly within the analytical ambit of FRE 609(a), this standing alone does not end the analysis. Any such conviction that a defendant wishes to introduce must still satisfy FRE 403's undue prejudice test. Imposing the FRE 403 requirement recognizes that the purpose of Rule 609(a) is not to "stink up" a witness's character, but rather simply "to shed light on the witness's credibility." *United States v. Neely*, 980 F.2d 1074, 1080 (7th Cir. 1992). Such concerns are rightly borne from the likelihood that a jury may discredit a party's testimony "not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question. That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent." *Earl v. Denny's, Inc.*, 2002 WL 31819021, at *8 (N.D. Ill. December 13, 2002); *see also Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990) ("We are mindful of our duty to ensure that this class of civil rights plaintiffs are not unfairly prejudiced by the use of their criminal pasts against them.")

As multiple courts within this District have noted, felony drug convictions are precisely the sort of convictions wherein the probative value is outweighed by the prospect of undue prejudice. *See Taylor v. City of Chicago*, 2012 WL 3686642 *6 (N.D. Ill. Aug. 24, 2012) (felony drug convictions inadmissible, as they "equate sufficiently to

forbidden propensity evidence"); *Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003) (finding that "only slight probative value" of controlled substance conviction was substantially outweighed by unfair prejudice to plaintiff). Such logic is availing to the instant dispute. Plaintiff's prior drug convictions are entirely irrelevant to the underlying dispute herein and in no way impugn his credibility as a witness. It is transparently clear that Defendants are only seeking to use such evidence to suggest that the Plaintiff is a "bad person" because he has committed drug-related offenses. The likelihood of such prejudice and the lack of any probative value to the instant dispute weigh in favor of barring Defendants from introducing such evidence at trial.

Additionally, Plaintiff has several convictions outside the ten-year window which must therefore be analyzed for admissibility purposes under FRE 609(b)(1) and are therefore presumptively inadmissible. The documents tendered by Defendants indicate that all such convictions were either for some variation of possession of controlled substances or for driving under the influence. As previously discussed, such convictions have continuously been held inadmissible for purposes of Rule 609 as the prejudicial effect far outweighs any categorical probative value. Furthermore, with respect to the instant dispute, there is no evidence that the Plaintiff was under the influence of alcohol or narcotics during his encounter with the Defendants and as such, these remote convictions likewise have no probative value.

### History of illegal drug use

The Seventh Circuit has been consistently clear (reaffirmed at least twice in recent years) about the "considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony." *Kunz*

6

*v. City of Chicago*, 538 F.3d 667, 677 (7th Cir. 2008); *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007), *citing United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir. 1992) and *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987). *See also Buffone v. Rosebud Restaurants, Inc.*, 2006 WL 2425327, at *2 (N.D.Ill. Aug. 21, 2006) ("Even if relevant, any arguable probative value of evidence about their drug use is substantially outweighed by the danger of unfair prejudice"), *citing Mankey v. Bennett*, 38 F.3d 353, 360 (7th Cir. 1994).

As previously discussed, Plaintiff has been arrested and convicted on prior occasions regarding drug-related offenses. Plaintiff was neither in possession of, nor under the influence of, alcohol or narcotics during the incident in question however and as such, the only possible reason that Defendants would elicit such evidence would be in an attempt to present such evidence as "prior bad acts" – plainly inadmissible under FRE 404 and 608. *See Robinson v. DeTella*, 97 F.3d 942, 949 (7th Cir. 1996) ("Absent a connection to Chavez's cognitive abilities, Jones' testimony [about prior drug use] would have served only to impeach her character, a purpose we have repeatedly deemed improper"); *United States v. Boyd*, 833 F. Supp. 1277, 1359 (N.D.Ill. 1993) ("As a general rule, a witness' past drug use is not probative of veracity and, thus, is not a proper subject for cross examination") (citations omitted); *Happel v. Wal-Mart Stores, Inc.*, 2007 WL 495277, at *3 (N.D.Ill. Feb. 9, 2007) (granting motion to bar any references to plaintiff's illicit drug use without objection); *Buffone*, 2006 WL 2425327, at *2 ("speculative assumptions preclude [defendant] from building a logical connection between Buffone's drug use and [anything at issue]").

**Gang affiliation**

Plaintiffs move, pursuant to Fed.R.Evid. 402, 403, 404(a), 404(b) and 608, for an order barring questions, argument, and innuendo regarding gang affiliation. The LEADS data contained in some of the materials produced by the Defendants in discovery has the Plaintiff "flagged" as a gang member. To state the obvious, these documents are clearly hearsay and as such, are inadmissible in and of themselves. Furthermore, there is no evidence that there was any gang activity related to the incidents underlying this action. Thus, any reference to gangs would be prejudicial to Plaintiff and should be barred. *See Lopez v. City of Chicago*, 2005 WL 563212, at *5 (N.D. Ill. March 8, 2005) (Der-Yeghiayan, J.) (rejecting argument that gang affiliation went to §1983 plaintiff's damages and concluding that the unfair prejudice outweighed relevance); *United States v. Davis*, 2001 WL 1195729, at *2 (N.D.Ill. Oct. 9, 2001) (excluding gang references as "enormously and unfairly prejudicial" under FRE 403); *Brown v. Joswiak*, 2004 WL 407001, at *1 (N.D. Ill. Feb. 24, 2004) (barring without objection all references to "evidence or testimony concerning the gang affiliation or tattoos of Brown or his witnesses").

Such issues and incidents are inadmissible for the additional reason that the officers involved in this case had no prior personal knowledge of either Plaintiffs' alleged history at the time of the incident (indeed, they did not know the identity of the individuals they had encountered prior to the encounter), and therefore, such information has no relevance to the Fourth Amendment inquiry. It is a bulwark of Fourth Amendment jurisprudence that a jury must judge the objective reasonableness of an officer's actions based on the facts known to the officer at the time he or she chose to act. *Sherrod v.*

*Berry*, 856 F.2d 802, 804-805 (7th Cir. 1988) ("When a jury measures the objective reasonableness of an officer's action, it must stand in his shoes and judge the reasonableness of his actions based upon the information he possessed and the judgment he exercised in responding to that situation.")(*en banc)*.

As a result, juries are not permitted to learn facts that the officer did not possess at the time he acted. This prohibition on after-acquired information is particularly important in cases involving the use of deadly force because: "the objective reasonableness standard . . . requires that [the officer's] liability be determined exclusively upon an examination and weighing of the information [he] possessed immediately prior to and at the very moment he fired the fatal shot. The reception of evidence or any information beyond that which [the o]fficer had and reasonably believed at the time he fired his revolver is improper, irrelevant and prejudicial to the determination of whether [the o]fficer acted reasonably 'under the circumstances.'" *Id*.

Granting Plaintiffs' motion and barring all reference to the incidents noted herein is proper under F.R.E. 401-403. The latter rule applies not only because of the risk of unfair prejudice, but also because interjecting the issue could occasion a needless trial within a trial. *See Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989) (Rule 403 applies where evidence would have given rise to the risk of a "trial within a trial").

### PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO BAR CHARACTER EVIDENCE RELATING TO THE DEFENDANT OFFICERS

The Defendant officers may have received commendations and/or awards in the course of their employment as Harvey police officers. However, the introduction of this evidence at trial is inadmissible under Federal Rule of Evidence 404(a). *See* Fed. R. Evid.

404(a). Nor does such evidence fall under the character evidence exceptions. *See* Fed. R. Evid. 404(a)(1), 404(a)(2) and 404(a)(3).

Character evidence in the form of past commendations and/or honors of the Defendant officers is wholly unrelated and irrelevant to Plaintiff's claims. Such evidence does not bear upon the issue of excessive force used by Defendants or whether they had probable cause to arrest the Plaintiffs. It is self-serving and catered to cast Defendants in this sort of favorable light. Moreover, it is a distraction from the true issues at bar in this matter: did Defendants use excessive force on Mr. Owens without legal justification to do so?

Furthermore, evidence of commendations earned by the Defendants would constitute inadmissible hearsay under Fed. R. Evid. 401(a)(1). *See United States v. Washington*, 106 F.3d 983 (D.C.Cir. 1997); *United States v. Nazzaro*, 889 F.2d 1158 (1st Cir. 1989); *United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987). Lastly, such evidence has absolutely no probative value regarding the disputed issues in this litigation and would be highly prejudicial to Plaintiffs. Hence, it must be excluded from trial. *See* Fed. R. Evid. 401, 403 and 404.

## PLAINTIFFS' MOTION *IN LIMINE* NO. 5 TO BAR ARGUMENT OR MENTION OF POLICE OFFICERS RISKING THEIR LIVES ON THE JOB

Defendants should be barred from mentioning and/or arguing that police officers risk their lives on the job. This evidence is not relevant to the instant cause and is intended to divert the jury's attention from the facts of the case. While it is true that some police officers may risk their life on the job, a general argument of this nature is not relevant to the incident in question and simply seeks to engender the jury's sympathy for the defendants due to their status as police officers. The fact that police officers do have

some risk in their job speaks to nature of their profession and does not meaningfully contribute to a determination of whether the defendants were legally justified in entering the residence, arresting the Plaintiffs, or using force on the date of the incident in question. Introducing testimony of the risks involved in a police officer's job simply bolsters the officers as character evidence, in violation of FRE 404(b) and is a masked method of implying that police officers are heroes. This implication may result in the jury giving greater weight to the police officers or looking upon them sympathetically simply by virtue of their status as police officers. Further, such evidence has absolutely no probative value regarding the disputed issues in this litigation and would be highly prejudicial to Plaintiffs. *See* Fed. R. Evid. 401, 403 and 404.

Alternatively, even if Defendants are allowed to ask questions to the witnesses with regards to the risk involved, they should not be allowed to make any arguments related to the general risk a police officer has on the job in their closing argument. The closing argument only concerns facts or reasonable inferences that can be drawn from the facts of the case. Speaking generally about the risk that police officers take on the job is not connected to the facts of the case and therefore should not be allowed.

Plaintiff likewise requests that this motion encompass the fact that Defendant Kelley may have been shot while on duty after the incident in question, as he testified was the case during his deposition. Considering that this shooting occurred after the incident at bar, it clearly could not have factored into his thought process during his encounter with Mr. Owens. As such, its only conceivable value would be to improperly bolster his credibility, in that it would suggest because he was injured in the line of duty some time after the fact, he could not have used excessive force on D-Juan Owens in

11

October 2011. There is no logical correlation between these two propositions and would seek only to engender juror sympathy.

## PLAINTIFF'S MOTION *IN LIMINE* NO. 6 TO BAR DEFENDANT OFFICERS FROM WEARING UNIFORMS AND MEDALS AT TRIAL

Defendants may come to the courtroom wearing their police uniforms and medals that they have been issued during their careers. For the same reasons mentioned in motion *in limine* 4 above, Defendants should be precluded from wearing their uniforms or medals in the courtroom. The introduction of this evidence at trial is inadmissible under Federal Rule of Evidence 404(a). *See* Fed. R. Evid. 404(a). Nor does such evidence fall under the character evidence exceptions. *See* Fed. R. Evid. 404(a)(1), 404(a)(2) and 404(a)(3).

Character evidence in the form of uniforms or medals of the Defendants and/or other Chicago police officers that may be called to testify is wholly unrelated and irrelevant to Plaintiffs' claims. Such evidence does not bear upon the issues of whether the Defendants violated D-Juan Owens' constitutional rights. It is self-serving, with the purpose of casting Defendants in a favorable light and suggesting that these officers have greater credibility due to their positions as police officers. Thus, it is a distraction from the true issues at bar in this matter. Such evidence has absolutely no probative value regarding the disputed issues in this litigation and would be highly prejudicial to Plaintiff. Hence, it must be excluded from trial. *See* Fed. R. Evid. 401, 403 and 404.

## PLAINTIFFS' MOTION *IN LIMINE* NO. 7 TO BAR DEFENDANTS FROM USING MUNICIPAL RESOURCES/POLICE DATABASES DURING AND AFTER JURY SELECTION

It is anticipated that defense counsel may attempt to use their exclusive access to police databases such as the CLEAR Data Warehouse, LEADS, and/or other

computerized databases unique to the Chicago police department during jury selection to obtain information about the arrest records of prospective jurors. This practice has recently come under judicial scrutiny and courts have taken care to note that the permissibility of using law enforcement databases to obtain information about prospective jurors during voir dire is an unsettled issue in this District. *See e.g. Gonzalez v. Olson*, *et. al*., 11 C 8356 at Docket #294 (June 25, 2015, Gilbert, J.); *Dyson v. Szarzynski*, 13 C 3248 at Docket #92 (Dec. 18, 2014, Kim, J.).

In *Dyson*, although the plaintiff agreed to permit the defendant to conduct such background checks subject to various qualifiers, Magistrate Judge Kim still took the opportunity to voice numerous concerns inherent with said process, the parties' stipulation notwithstanding. Such concerns included: (a) the possibility "that prospective jurors might come to the conclusion that all information that can be gathered ought to be gathered, regardless of the court's prohibition against independent juror research;" (b) the prospect of unfair imbalance in information; (c) the possibility that "by approving the shared use of CLEAR as part of *voir dire*, it may appear that the court condones a use of technology for a purpose not intended by its designers, and in so doing may be perceived to lend judicial endorsement to a tool that may or may not accurately uncover juror dishonesty;" and (d) the possibility that such use "may send an unwanted message to potential jurors that the court does not trust them or that the potential jurors' oath that they are to answer all questions truthfully." *Dyson*, 13 C 3248 at Docket #92.

Magistrate Judge Gilbert echoed these concerns in *Gonzalez* and granted the plaintiff's motion *in limine* to prohibit such tactics. Additionally, Magistrate Judge Gilbert observed that, in addition to a plaintiff in a Section 1983 action, litigants in "run-

13

of-the-mill civil cases" likewise do not have access to such databases, and the court therefore refused to place police officers "in a special position such that they should be able to use private databases to aid them in selecting a civil jury when others cannot." *Gonzalez*, 11 C 8356 at Docket #294.

These concerns as highlighted by Magistrate Judges Gilbert and Kim are well founded. Moreover, as has also been repeatedly noted by courts in this District examining this issue, Illinois law limits the use of law enforcement databases to law enforcement purposes *only* – of which picking a jury in a civil lawsuit decidedly does not encompass. *Id.*; *see also Hill v. City of Chicago*, 2011 WL 3205304, at \*4 (N.D. Ill. Jul. 28, 2011, St. Eve, J.). In light of such growing concerns, Plaintiffs respectfully request an order barring Defendants and defense counsel from using any unique access to CLEAR, LEADS or any other governmental database for any purpose relating to this trial during the pendency of this trial.

## PLAINTIFFS' MOTION *IN LIMINE* NO. 8 TO BAR REFERENCE TO THE ARREST RECORDS OR ARREST HISTORY OF THE PLAINTIFF AND ANY NONPARTY WITNESSES

Any reference to the prior arrest record of Plaintiffs and any witnesses, including the nature of any criminal offense and any underlying facts and circumstances of the arrests, should be barred as this information is immaterial and irrelevant to any issues in this cause. Any arrest that did not result in a conviction is not admissible under Fed.R.Evid. 609, which provides only for the admission of criminal *convictions* into evidence under certain circumstances. Further, the prejudicial effect will outweigh any probative value this information may have. FRE 403.

14

Arrests that do not lead to convictions are generally inadmissible under well settled law. *See Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) (law is clear that a party's prior arrest record is inadmissible; even indirect reference to a party's past arrest is improper); *Brandon v. Village of Maywood*, 179 F. Supp 2d 847, 853-55 (N.D. Ill. 2001) (carefully considering and rejecting all arguments for admission of arrest record — such as "bias" or damages — because prejudice outweighs probative value, especially where officers did not know about the past arrest at the time of the incident). Evidence of Plaintiffs' or a witness' prior arrests is nothing more than prior bad act evidence which is not admissible under the Federal Rules of Evidence. *See Gregory v. Oliver*, 2003 WL 1860270, at *1 (N.D. Ill. April 9, 2003) ("Arrests that have not lead to convictions are classic candidates for exclusion under [F.R.E.] 404(b)"); *Blessing v. Kulak*, 1988 WL 67637, at *1 (N.D. 111. June 22, 1988) ("The use of the evidence of prior arrests, despite defendants' arguments, is in the manner of demonstrating that [he] had a propensity for committing burglary [and is thus] inadmissible under Rule 404(b)"); *see also Earl v. Denny's, Inc.*, 2002 WL 31819021, at *8 (N.D. Ill. Dec. 13, 2002) ("[A] jury may deny plaintiff a verdict and an award, not because it doubts [plaintiff's] veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question. That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent"); *Gora v. Costa*, 971 F. 2d 1325, 1331 (7th Cir. 1992) ("courts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her.").

Witness Dexter Moore testified in his deposition that approximately seven or eight years prior thereto, he had been arrested for DUI by the Harvey police department during which time he was driving without a license and gave the name "Larry," the he

enrolled in some sort of program as a result of said arrest, and that he did not do any time in custody as a result thereof. *See* **Exhibit A**. This evidence is not relevant to the witness's propensity to tell the truth and should therefore be barred.

From the outset, Defendants have not presented a certified copy of conviction, an arrest report, or any other documents that would memorialize Mr. Moore's prior encounter with the Harvey police department beyond his own testimony and as such, it is impossible to determine whether said arrest and disposition was a felony or misdemeanor. If a misdemeanor, it is categorically inadmissible under Fed. R. Evid. 609. Even in the unlikely event that this encounter resulted in felony charges, substance-related offenses are not probative of a witness's propensity to testify truthfully and courts have routinely barred their use, as previously discussed herein with respect to Plaintiff's prior convictions. *See e.g. Robinson*, 97 F.3d at 949.

Likewise, the use of an alias during the course of said arrest is likewise irrelevant. Such evidence is not probative of anything to be decided in this case and there is no evidence that Mr. Moore routinely used an alias or was using an alias during the incident in question. It should likewise be barred.

Plaintiff also submits that the arrest itself should not be mentioned, despite the fact that it occurred in Harvey. Mr. Moore was questioned about any potential bias he may have against the City of Harvey because of this arrest and he responded that he did not have any such bias. Defendants have done nothing further to develop any such theory and have not presented any evidence that would call this response into question.

Such evidence is not probative of any issue in this case, would waste the jury's time, and is likely to confuse and/or mislead the jury.  For these reasons, any reference to

16

arrests records and arrest history should be barred pursuant to Fed.R.Evid. 402, 403 and 404.

### PLAINTIFF'S MOTION *IN LIMINE* NO.9 TO BAR DEFENDANTS FROM ARGUING THAT PLAINTIFF'S MEDICAL TREATMENT WAS "EXCESSIVE," "UNNECESSARY," "UNREASONABLE," "OVER-TREATING," OR SIMILAR PHRASES

During his encounter with the Defendants, D-Juan Owens suffered two broken arms, a broken foot, 2 scalp lacerations requiring staples to close, and a closed-head injury. Absent stipulation by Defendants, it is anticipated that several of Mr. Owens' treating physicians will testify about the professional services rendered and the prognosis for Mr. Owens' various injuries. Defendants have not disclosed any expert witnesses to testify that the medical treatment Mr. Owens has received is not reasonable and necessary.

While it is undoubtedly the province of the jury, as the finder of fact, to determine whether to award damages in this matter and the Plaintiff certainly bears the burden of establishing the elements of his causes of action, this does not afford Defendants or their counsel the opportunity to interject arguments that Mr. Owens' medical treatment has been "excessive" or "unnecessary" or to use phrases such as "over-treating" without first establishing the necessary foundation for such medical opinions. Such testimony as to the reasonableness and necessity of Mr. Owens' medical treatment is certainly expert testimony within the context of the Federal Rules of Evidence. See FRE 702, 703, and 705. Again, Defendants have not disclosed any such experts and must therefore be barred from presenting expert testimony thinly veiled as factual observations.

**PLAINTIFF'S MOTION *IN LIMINE* NO. 10 TO BAR DEFENDANTS FROM ARGUMENT OR QUESTIONING REGARDING WHETHER THE PLAINTIFF WAS INJURED DURING THE COURSE OF A PRIOR ARREST**

Included in the discovery documents produced by Defendants are records indicating that the Plaintiff may have suffered injuries during the course of a 2008 arrest by the Blue Island police department. In addition to the reasons discussed in Plaintiff's Motion *in Limine* No. 3 as to why such evidence should not be admitted, even if said motion is denied with respect to the conviction, Defendants should not be permitted to inquire about the specifics of that particular arrest. There is no evidence that Defendants knew about this prior incident during their encounter with the Plaintiff, nor could they have, as they were unfamiliar with the Plaintiff. Furthermore, Defendants have not adduced any evidence, or conducted any discovery, regarding this alleged incident other than a motion for bond reduction in the criminal file underlying this prior arrest and general questioning during the Plaintiff's deposition. As such, discussing this issue at trial herein, and sorting through the details, would unquestionably result in the needless, prototypical trial within a trial deemed irrelevant under FRE 403. *Jones*, 869 F.2d at 1027.

Moreover, even to the extent that Defendants might argue that such information could be relevant to damages, the discovery materials (threadbare though they are) fail to bear this theory out. Defendants' discovery documents reference injuries to Plaintiff's right femur and right radius bone. The injuries suffered in the incident in question were injuries to the left foot and the left and right ulna bone. As such, there is no argument to be made that the injuries are in any way related, nor have Defendants either produced documents or disclosed witnesses that would be indicative of same. Introducing this

18

evidence would once again amount to nothing more than bad character evidence and, for reasons stated, should not be permitted.

## PLAINTIFF'S MOTION *IN LIMINE* NO. 11 TO INTRODUCE WITNESS DEXTER MOORE'S TESTIMONY THROUGH DEPOSITION

On January 2, 2015, witness Dexter Moore sat for a deposition. During the course of his deposition, Mr. Moore testified that he is a resident of the State of Alabama and further provided his address in said state. *See* **Exhibit A**. Pursuant to Fed. R. Civ. P. 32(a)(4)(B), Plaintiff respectfully requests that the Court permit him to introduce Mr. Moore's deposition testimony in lieu of live testimony, as his home in Alabama is beyond 100 miles and thus outside the Court's subpoena power. No party will be prejudiced if this motion is granted. Defendants took Mr. Moore's deposition and thus had full opportunity to examine him on his knowledge of the facts underlying this case. His present situation fits squarely within Rule 32(a)(4)(B) and Plaintiff should thus be permitted to introduce his testimony via deposition transcript.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order granting Plaintiffs' Motions in Limine for reasons stated herein and for any further relief the Court deems necessary and just.

Respectfully submitted,

/s/ Joshua S. Patrick

Gregory E. Kulis
Joshua S. Patrick
GREGORY E. KULIS AND ASSOCIATES, LTD.
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
(312) 580-1830

19