**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| D-JUAN OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-cv-7568 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| P.O. Ellison, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND OPINION ORDER**

Plaintiff D-Juan Owens brings this civil rights action under 42 U.S.C. § 1983 alleging that Defendant Steven Kelley[1] used excessive force against him in effectuating an arrest and that Defendant Joseph Ellison observed this alleged use of force and failed to intervene despite the opportunity to do so. Plaintiff also brings a *Monell* claim against the City of Harvey, which has been bifurcated. [76.] Before the Court are Plaintiff's motions *in limine* [68] and Defendants' motions *in limine* [60], [61], [62], [63], [64], [66], and [67]. For the reasons set forth below, Plaintiff's motions *in limine* [68] are granted in part and denied in part: the Court grants Plaintiff's motions No. 1, 2, 4, 7, 8, and 11; the Court grants in part and denies in part Plaintiff's motions No. 3, 5, and 6; and the Court denies Plaintiff's motions No. 9 and 10.

Defendants' motions *in limine* also are granted in part and denied in part: the Court grants Defendants' motions No. 3 [62], 4 [63], and 7 [67]; the Court grants in part and denies in part Defendants' motions No. 1 [60], 2 [61], and 5 [64]; and the Court denies Defendants' motion No. 6 [66]. This case remains set for a jury trial to commence on April 3, 2017. The Court directs

_____

[1] The Court notes that some filings on the docket use the spelling "Kelly" and others use the spelling "Kelley."

the parties to submit revised exhibit lists that take into account the Court's rulings above no later than 12:00 p.m. (noon) on March 31, 2017. As discussed at the final pretrial conference, to the extent that objections remain to any proposed exhibits that the parties wish to use as substantive evidence,[2] the parties must provide a chart setting out the number of the exhibit, a more detailed summary of the objection, and the response to the objection no later than 12:00 p.m. (noon) on March 31, 2017.

## I.    Background

Plaintiff alleges that on or about October 23, 2011, he was in the vicinity of 147th Street and Ashland Avenue in Harvey, Illinois after running from the police. [29 (First Amended Complaint), at ¶ 5.] He contends that he hurt his ankle as he was going over a fence, and then surrendered and was no threat to the Defendants Ellison and Kelley, who are Harvey police officers. [*Id.* at ¶¶ 6–7.] According to Plaintiff, without any reasonable cause, Defendant Kelley struck him on the back of the head. Plaintiff alleges that he was then on his knees, when he was struck on the front of his head. He contends that he covered his face and head with his hands and arms as one or more of the Defendants continued to strike him. Plaintiff alleges that one or more of the Defendants continued to strike him with an object, injuring his arms and wrist, and that Defendant Kelley continued to kick and stomp on him. [*Id.* at ¶¶ 8–12.] Plaintiff asserts that Defendants' use of force was unprovoked, excessive, and unreasonable. [*Id.* at ¶¶ 13–14.] Plaintiff alleges that Defendant Ellison stood by and allowed the continued excessive use of force and attacks to occur even though he could have intervened. [*Id.* at ¶ 15.] According to Plaintiff, as a result of Defendants' conduct, he was severely injured and suffered permanent

---

[2] The parties are not to include on this chart of disputed exhibits any exhibits related solely to Plaintiff's *Monell* claim or exhibits the parties intend to use only for impeachment purposes or refreshing recollection.

disfigurement. [*Id.* at ¶¶ 16, 20.] Defendants deny striking Plaintiff. [31 (Answer to Amended Complaint).]

On October 13, 2013, Plaintiff filed the instant lawsuit, bringing an excessive force claim against Defendants Kelley and Ellison, a *Monell* claim against the City of Harvey ("the City"), see *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976), and a claim for indemnification. On March 7, 2017, the Court granted the City's motion [59] to bifurcate Plaintiff's *Monell* claim against the City from the claims against the individual Defendants. [76.] A jury trial is set to begin on April 3, 2017.

## II.    Legal Standard

A motion *in limine* is a motion made "at the outset" or "preliminarily." Black's Law Dictionary 803 (10th ed. 2014). Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997). The party seeking to exclude evidence "has the burden of establishing the evidence is not admissible for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). The power to rule on motions *in limine* inheres in the Court's role in managing trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

### III.    Plaintiff's Motions *in Limine* [68]

#### A.    Plaintiff's Motion No. 1: Jury as Taxpayers

Plaintiff moves to bar any arguments that appeal to jurors' pecuniary interests as taxpayers.  Defendants assert that they do not intend to make any such arguments.  Thus, this motion is granted.

#### B.    Plaintiff's Motion No. 2: Bar Non-Party Witnesses from Courtroom

Plaintiff moves to exclude non-party witnesses from being present in the courtroom prior to their testimony.  Defendants do not object to this motion and assert that they expect the same from Plaintiff.  Thus, this motion is granted, and non-party witnesses from either side are not to be present in the courtroom prior to their testimony.

#### C.    Plaintiff's Motion No. 3: Plaintiff's Prior Bad Acts

Plaintiff moves to bar reference to (1) his prior arrests that did not result in conviction, (2) his criminal conviction, (3) his illegal drug use, (4) his alleged prior gang affiliation.

##### 1.    Prior Arrests that Did Not Result in Conviction

Defendants assert that they do not intend on introducing evidence of Plaintiff's prior arrests that did not result in convictions, unless Plaintiff opens the door.  To this end, Plaintiff's motion is granted in part: Defendants are barred from introducing evidence of Plaintiff's prior arrests that did not result in conviction, unless Plaintiff opens the door by testifying that he does not have a prior criminal history.

##### 2.    Prior Criminal Convictions

Plaintiff seeks to bar reference to a 2011 conviction for driving on a suspended/revoked license, a 2010 misdemeanor battery conviction, an October 2009 conviction for possession of a controlled substance, a February 2009 conviction for possession of cannabis, and an October

2007 conviction for possession of cannabis. Plaintiff argues that his prior convictions are "entirely irrelevant to the underlying dispute herein and in no way impugn his credibility as a witness." [68, at 6.] Defendants assert that the only prior conviction they seek to admit is Plaintiff's February 2009 conviction for possession of between 30–500 grams of cannabis (08C66108101).[3] Defendants argue that it is permissible to admit evidence of prior convictions to impeach Plaintiff's credibility.

Federal Rule of Evidence 609 provides that for a crime punishable by death or by imprisonment for more than one year, the evidence of the criminal conviction must be admitted, subject to Rule 403, in a civil case. See Fed. R. Evid. 609(a)(1)(A). Rule 403, in turn, provides that the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403.

The Seventh Circuit has elucidated a five-part test in criminal cases to guide the district court in the exercise of its discretion in determining whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the witness's testimony; and (5) the centrality of the credibility issue. See *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). "While not all of those factors will apply in civil cases, the same general concerns may illuminate the court's analysis." *Buchanan v. McCann*, 2012 WL 1987917, at *1 (N.D. Ill. June 4, 2012) (citing *Anderson v. City of Chicago*, 2010 WL 4928875, at *2–3 (N.D. Ill. Nov. 30, 2010)). The Seventh Circuit has also cautioned district courts to "be careful to ensure that a civil

---

[3] Defendants also seek to admit the conviction stemming from the incident giving rise to the current lawsuit, which Plaintiff concedes is admissible.

rights plaintiff's criminal past is not used to unfairly prejudice him or her." *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992).

On balance, the five factors set forth above weigh in favor of admitting the fact, but not the nature, of Plaintiff's February 2009 conviction for possession of cannabis. As to the first factor, the fact that Plaintiff is a felon has some, but not strong, impeachment value given the nature of Plaintiff's February 2009 crime. In general, "[r]ule 609 rests 'on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying.'" *Cartwright v. City of Chicago*, 2013 WL 3984434, at *1 (N.D. Ill. Aug. 2, 2013) (quoting *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987)). This general principle applies here even though Defendants have not cited cases demonstrating specifically that convictions for possession of a controlled substance implicate a party's truthfulness. On the other hand, the conviction poses some risk of prejudice to Plaintiff due to the nature of the crime.

Turning to the second factor, the February 2009 conviction is eight years old. Under Rule 609(b), convictions more than ten years old are admissible only if the Court determines "that the probative value of the conviction * * * substantially outweighs its prejudicial effect." Fed. R. Evid 609(b); *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004). Here, the February 2009 conviction is within the last ten years and therefore does not fall into the Rule 609(b) limitation. The third factor is not relevant in civil cases. As to the fourth factor, Plaintiff's testimony will be critical in this case because Plaintiff is a key witness to his own alleged beating and the jury will be required to determine whether it finds Plaintiff's version of

the facts more plausible than Defendants' version. For the same reason, the fifth factor—the centrality of the credibility issue—weighs in favor of admitting Plaintiff's February 2009 conviction. See *United States v. Grant*, 396 F.3d 906, 909–910 (7th Cir. 2005) (concluding that given defendant's theory that he possessed a pipe, not a gun, his credibility was crucial and therefore, impeachment with eight year old conviction for drug crime was proper); *United States v. Montgomery*, 390 F.3d 1013, 1016 (7th Cir. 2004) (holding that the district court correctly recognized that defendant's credibility was central to the case and impeachment with prior drug conviction was proper).

Considering these factors together, the Court denies in part Plaintiff's motion *in limine* and concludes that evidence of Plaintiff's February 2009 felony conviction is admissible under Rule 609(a)(1)(A) but should be limited and sanitized to reduce the risk of prejudice to Plaintiff. See *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009); *Smith v. Nurse*, 2016 WL 4539698, at *4 (N.D. Ill. Aug. 31, 2016); *Buchanan*, 2012 WL 1987917, at *2. Defendants' impeachment of Plaintiff in this context shall be limited to the fact that Plaintiff is a convicted felon. If Defendant decides to impeach Plaintiff on this basis, the Court will provide a limiting instruction to the jury explaining the proper use of prior convictions for impeachment at trial. See Seventh Circuit Pattern Civil Jury Instructions 1.15 ("You have heard evidence that [Name] has been convicted of a crime. You may consider this evidence only in deciding whether [Name's] testimony is truthful in whole, in part, or not at all. You may not consider this evidence for any other purpose."). However, the Court grants in part Plaintiff's motion *in limine* and bars reference to Plaintiff's other prior convictions.

### 3. Illegal Drug Use on the Day of the Incident.

Plaintiff seeks to bar Defendants from introducing evidence of his alleged use of illegal drugs on the day of the incident in question. Plaintiff argues that there is no actual evidence that he was impaired or intoxicated or that he used narcotics "during the incident in question," as Defendants have not disclosed any medical expert witness. Defendants argue that there are indications that Plaintiff used illegal drugs on the day of the incident and that evidence of drug use on that day is relevant to the credibility of Plaintiff's perception of the events that occurred.

The Court agrees with Defendants that evidence of Plaintiff's alleged drug use on the day of the occurrence is relevant to his understanding of the events as they occurred and his credibility. See *Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979) (concluding that the district court did not err in permitting defendant to prove that plaintiff was intoxicated at the time of the incident to show that plaintiff's judgment was impaired when the incident occurred); *Mowrey v. City of Fort Wayne*, 2013 WL 6512664, at *5 (N.D. Ind. Dec. 12, 2013) (concluding that whether plaintiff was intoxication or under the influence of any narcotics at the time of the incident is relevant to the jury's evaluation of his credibility and thus admissible for the purposes of challenging his perception of the events); *Casares v. Bernal*, 790 F. Supp. 2d 769, 785–86 (N.D. Ill. 2011) ("Where there is reason to believe that alcohol or marijuana had seriously impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his drug or alcohol use is admissible.").

Plaintiff argues that Defendants should not be allowed to introduce evidence of a notation in his medical chart indicating that his metabolic drug screen came back positive for opiates because he was given intravenous opiate pain relievers upon his admission to the hospital.

Plaintiff further argues that even if he had tested positive for illicit, as opposed to medicinal opiates, the metabolic drug screen would not conclusively establish that he consumed such narcotics. However, this does not persuade the Court that it is necessary to bar this evidence, as Plaintiff will have the opportunity to make those points through cross-examination at trial. *Casares*, 790 F. Supp. 2d at 785–86. Thus, Defendants are permitted to introduce evidence of this notation for opiates on Plaintiff's medical chart. Additionally, Defendants are permitted to testify as to what they observed regarding Plaintiff's behavior during the incident. See *Mowrey*, 2013 WL 6512664, at *6; F.R.E. 701 (A witness is permitted to testify "in the form of an opinion that is * * * rationally based on the witness's perception[.]"). Thus, Plaintiff's motion is denied to this extent.

### 4. Prior Gang Affiliation

Defendants assert that they do not intend to introduce evidence of Plaintiff's prior gang affiliation, thus Plaintiff's motion is granted to this effect.

### D. Plaintiff's Motion No. 4: Character Evidence of Defendants

Defendants do not oppose Plaintiff's motion to bar evidence of commendations or awards Defendants may have received in the course of their employment, and thus it is granted. Plaintiff is similarly to refrain from introducing such evidence with respect to his course of employment.

### E. Plaintiff's Motion No. 5: Police Officers Risking Their Lives

Plaintiff moves *in limine* to bar Defendants from arguing that "police officers risk their lives on the job." Plaintiff argues that this is not relevant to the instant case and would divert the jury's attention away from the facts of the case. Alternatively, Plaintiffs contends that even if Defendants are allowed to question witnesses with regard to the risk involved in police work, Defendants should be barred from making any argument related to the general risks of police

work during closing arguments. Plaintiff requests that this motion encompass the fact that Defendant Kelley may have been shot while on duty after the incident in question. On the other hand, Defendants assert that arguments about the risks of police work are relevant because the "fact that a police officer has a higher risk level than another profession has a significance to how they react to situations while on duty and how they make decisions while on the job."

The Court agrees with Defendants that the risks inherent to police work are relevant to their decisionmaking process and affects how they might respond to various situations. Thus, Plaintiff's motion is denied in part. See *Martinez v. City of Chicago*, 2016 WL 3538823, at *25 (N.D. Ill. June 29, 2016) (denying similar motion); *Jones v. City of Chicago*, 2017 WL 413613, at *8 (N.D. Ill. Jan. 31, 2017) (concluding that police officer defendants would be permitted to make arguments about the requirements of their profession to the extent they are relevant to the reasonableness of their conduct). Additionally, both parties have leeway in making their closing arguments, and Defendants' invocation of the general risks of police work is not so far beyond the scope of relevance or so prejudicial that it requires exclusion under Rules 401 or 403. *Martinez*, 2016 WL 3538823, at *25. That being said, the Court will entertain objections at trial should Defendants' arguments become gratuitous or otherwise violate the Federal Rules of Evidence.

However, Plaintiff's motion is granted to the extent that Defendants should not reference the fact that Defendant Kelley may have been shot while on duty after the incident in question. Defendants do not respond specifically to this part of Plaintiff's motion. The Court agrees with Plaintiff that since this shooting happened after the incident in question, the shooting would not have factored into Defendant Kelley's thought process on the day at issue, and is thus irrelevant. Therefore, Plaintiff's motion is granted in part.

**F.      Plaintiff's Motion No. 6: Defendants Wearing Uniforms and Medals at Trial**

Plaintiff seeks to bar Defendants and any other police officers who may be called to testify from wearing their police uniforms and medals at trial.  Plaintiff argues that the uniforms and medals would constitute impermissible character evidence, may cast Defendants in a favorable light and suggest that the officers have greater credibility due to their positions as police officers, and have no bearing on the issue of whether Defendants violated Plaintiff's constitutional rights.  Defendants assert that the witnesses that will be called at trial do not plan on wearing any medals.  However, Defendants argue that Plaintiff cites no case law or authority that prohibits Defendants or other witnesses from wearing their uniforms at trial.  Defendants contend that many of the witnesses may be coming to testify while still on duty or right before or after a shift which requires them to be uniformed.  Further, Defendants argue that it will be known that these individuals are police officers, so their uniforms will bear no prejudice to Plaintiff.

The Court grants in part and denies in part Plaintiff's motion.  The Court declines to bar Defendants and other witnesses from wearing uniforms at trial.  However, they will not be permitted to wear medals at trial.  The risk of inconvenience to the officers is high, whereas the risk of prejudice to Plaintiff is low, since the jury will otherwise be informed that the individuals are police officers.  See *Case v. Town of Cicero*, 2013 WL 5645780, at *4 (N.D. Ill. Oct. 16, 2013) (permitting officers to wear uniforms at trial but not medals or protective gear); *Sughayyer v. City of Chicago*, 2011 WL 2200366, at *4 (N.D. Ill. June 6, 2011) (permitting defendant officers to wear their uniforms in the courtroom for a § 1983 excessive force case and noting that the defendant officers were wearing their uniforms when they allegedly committed the acts that were the subject of the lawsuit and were being sued as police officers); *Tolliver v. Gonzalez*,

2011 WL 5169428, at *1 (N.D. Ill. Oct. 31, 2011) (permitting defendant officers to wear uniforms but not medals at trial); *Strong v. Clark*, 1990 WL 70421, at *2 (N.D. Ill. May 4, 1990) (permitting witnesses to wear uniforms to trial because of the inconvenience to the witnesses of carrying a change of clothes and the fact that the jury will learn from testimony that the witnesses are police officers).

### G.     Plaintiff's Motion No. 7: Police Databases

Plaintiff seeks to bar Defendants from using police databases such as CLEAR Data Warehouse, LEADS, or other computerized databases unique to the Chicago police department during jury selection to obtain information about the arrest records of prospective jurors. Defendants assert that they do not intend on using law enforcement databases for any purpose for voir dire or after regarding the jury during the pendency of this trial, thus Plaintiff's motion is granted to this extent. See *Martinez*, 2016 WL 3538823, at *22 (granting plaintiff's motion *in limine* and noting that the propriety of allowing a litigant in a civil case to access police databases to perform background checks on potential jurors and to use such information during *voir dire* is an unsettled question in this district); *Gonzalez v. Olson*, 2015 WL 3671641, at *8 (N.D. Ill. June 12, 2015) ("Police defendants are not in a special position such that they should be able to use private databases to aid them in selecting a civil jury when others cannot, even if [ ] they propose to share their findings with a plaintiff."); *Dyson v. Szarzynski*, 2014 WL 7205591, at *2–3 (N.D. Ill. Dec. 18, 2014) (articulating the cautionary concerns associated with allowing these background checks on potential jurors).

Plaintiffs also seek more broadly to bar Defendants from using any other governmental database for any purpose relating to this trial during the pendency of the trial. Defendants object to this request, arguing that it is vague, overly broad, and without authority. However,

Defendants to not explain how they wish to use these databases relating to this trial. Since Defendants do not offer a permissible purpose for which they would like to use the databases, Plaintiff's motion is provisionally granted. If Defendants can identify a permissible purpose for the use of governmental databases, they may seek reconsideration of this ruling.

**H.    Plaintiff's Motion No. 8: Arrest Records of Plaintiff and Nonparty Witnesses**

Plaintiff seeks to bar any reference to the prior arrest records of Plaintiff and any witnesses. Defendants assert that they do not intend on referencing prior arrest records or prior arrest history of Plaintiff or any non-party witness, unless Plaintiff or a nonparty witness testifies that they do not have a criminal history. Thus, Plaintiff's motion is granted, and Defendants are barred from referencing prior arrest records of Plaintiff and any witness, unless Plaintiff or a witness opens the door. However, Defendants are permitted to reference the arrest on the day of the occurrence, which Plaintiff concedes is relevant.

**I.    Plaintiff's Motion No. 9: Medical Treatment was Excessive**

Plaintiff moves to bar Defendants from arguing that his medical treatment was "excessive, unnecessary, unreasonable, over-treating, or similar phrases." Plaintiff explains that absent stipulation by Defendants, it is anticipated that several of his treating physicians will testify about the services rendered and the prognosis of his various injuries. Plaintiff argues that since Defendants have not disclosed an expert witness, they have not established the necessary foundation for any medical opinions and should thus be barred from arguing about the necessity of Plaintiff's medical treatment. Defendants, for their part, contend that Plaintiff's logic runs both ways, such that if they are barred from making this argument, then Plaintiff should be barred from arguing that the medical treatment was necessary or non-excessive. Defendants further argue that since they did not depose Plaintiff's medical professionals, they are not aware

of what the treating physicians' testimony will be at trial, and thus it is premature to bar Defendants from making such argument.

Under Federal Rule of Evidence 701, a lay expert can present testimony in the form of an opinion that is rationally based on the witness's perception. Although a witness must have a legitimate basis to testify about this subject, "expert testimony on this question [of medical necessity] is not necessary as a matter of law in any and all instances." *Carlson v. Banks*, 2007 WL 5711692, at *9 (N.D. Ill. Feb. 2, 2007); cf. *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004) ("In federal court, no expert testimony is needed [in a medical negligence case] when the symptoms exhibited by the plaintiff are not beyond a layperson's grasp."); *Ledford v. Sullivan*, 105 F.3d 354, 360 (7th Cir. 1997) (no expert needed in deliberate indifference case where plaintiff experienced nausea, dizziness, vomiting, a crawling sensation on his skin, emotional and mental regression, and depression when the defendants deprived him of his medication). The Court declines to bar Defendants from arguing that Plaintiff's medical treatment was excessive, but if a layperson is testifying to this effect, the layperson's opinion testimony must be "rationally based on the witness's perception." F.R.E. 701. Defense counsel may cross-examine Plaintiff's witnesses on whether Plaintiff's treatment was unnecessary or excessive, and in so doing may draw out testimony to support argument to that effect. See *Carlson*, 2007 WL 5711692, at *9. Further, Defendants may properly appeal to the jurors' common sense in addressing this issue. *Id.* Plaintiff's motion is denied, subject to reassertion at trial, when issues of foundation as to the particular witness at issue can be better assessed. See *id.*

**J.      Plaintiff's Motion No. 10: Injured During Prior Arrest**

Plaintiff seeks to bar argument or questioning regarding injuries he suffered during a 2008 arrest by Blue Island police officers. Plaintiff contends that his prior injuries are of his

right femur and the radius bone in his right forearm, and thus the injuries suffered in the incident in question—injuries to his left foot, ulna bone in his right forearm, and ulna bone in his left forearm—are in no way related. Defendants object to this motion as overly broad, arguing that Plaintiff's prior injuries, which occurred three years prior to the arrest at issue, are relevant to damages.

Plaintiff's motion is denied. See *Carlson*, 2007 WL 5711692, at *3 (denying plaintiff's motion to exclude reference to injuries she suffered before her arrest); *Couch v. Vill. of Dixmoor*, 2006 WL 3409153, at *2 (N.D. Ill. Nov. 27, 2006) (denying motion to bar evidence of plaintiff's prior injuries and noting although that the presence of a preexisting condition can cut both ways, prior injuries may be relevant); *Smith v. Sheahan*, 2000 WL 765089, at *5 (N.D. Ill. June 12, 2000) ("To the extent there is evidence supporting that the [injury at issue] was the continuance of prior injuries or that any of the pain and suffering was the continuance of prior injuries, defendant will not be precluded from presenting evidence of the preexisting injuries or conditions[.] * * * The jury will be appropriately instructed regarding consideration of preexisting injuries and conditions and causation."). The Court agrees with Defendants that Plaintiff's prior injuries are relevant to the issue of damages. Plaintiff is seeking remedies for pain and suffering, loss of a normal life, and emotional distress. In 2008, Plaintiff fractured the radius bone in his right forearm. During the occurrence at issue, Plaintiff fractured the other bone—the ulna bone—in the same forearm. Therefore, any pain and suffering and distress stemming from Plaintiff's prior injury to the right forearm is relevant to his present damages claim.

### K. Plaintiff's Motion No. 11: Dexter Moore's Testimony Through Deposition

Plaintiff seeks to introduce Dexter Moore's deposition testimony in lieu of live testimony, as Moore resides in Alabama. Defendants do not object, and thus this motion is granted. The parties are directed to submit to the Court by March 30, 2017 the transcript of Moore's testimony with the both sides' designations and any objections to the designated testimony.

## IV. Defendants' Motions *In Limine*

### A. Defendants' Motion No. 1 [60]: Conspiracy, Code of Silence, or Blue Wall

Defendants seek to bar Plaintiff from arguing that a conspiracy existed, since Plaintiff has not alleged the existence of a conspiracy in this case and there is no evidence to support an allegation of conspiracy. Defendants also seek to bar any allegations of a police "code of silence," that police officers cover up for other police officers, or that there is a "blue wall." Defendants argue that there is no evidence to support such allegations and that speculation regarding the "general nature of police officers" would be prejudicial to Defendants. Plaintiff responds that even without an independent conspiracy claim, he has brought a failure to intervene claim against Defendant Ellison and thus it is reasonable to argue that Defendant Ellison covered up the wrongdoing of his fellow officer, Defendant Kelley.

Defendants' motion is granted in part and denied in part. "District courts often exclude *generalized* evidence of a code of silence, but permit plaintiffs to develop the theme that a code of silence existed among the particular officers involved in the events underlying the complaint." *Hillard v. City of Chicago*, 2010 WL 1664941, at *3 (N.D. Ill. Apr. 23, 2010) (collecting cases). Thus, even though Plaintiff has not brought an independent conspiracy claim, to the extent that Plaintiff focuses on the particular Defendant officers and witnesses involved in this case, he may

explore the possibility that Defendants are biased because of their loyalty to one another. However, generalized allegations related to other police personnel who are not involved in this case are not relevant and are akin to impermissible propensity evidence. See *Martinez*, 2016 WL 3538823, at *7 (precluding "code of silence" references generally, but allowing the plaintiffs to introduce evidence regarding bias with respect to the defendants in that case); *Gonzalez*, 2015 WL 3671641, at *14 (same); *Bruce v. City of Chicago*, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011) (same); *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (same); see also *Hillard*, 2010 WL 1664941, at *3 ("Even absent a conspiracy claim, Plaintiff is entitled to some leeway to argue the defendant officers and witness officers are covering for each other.").

To the extent that Defendant is concerned about the use of the terms "conspiracy," "code of silence," or "blue wall" confusing the issues and misleading the jury, the Court directs Plaintiff to instead speak in terms of a "team effort" or similar terminology and to focus any allegations of bias on the officers with knowledge of this incident. See *Gonzalez*, 2015 WL 3671641, at *14. Defendants' objection to any particular line of questioning can only be assessed in the context of trial. However, the Court cautions Plaintiff that it will not permit a sideshow on the issue of conspiracy, which is not properly before the jury. See Fed. R. Evid. 403, 611. Plaintiff is not permitted to argue that the officers conspired with each other to deprive Plaintiff of his constitutional rights

### B.     Defendants' Motion No. 2 [61]: Prior Lawsuits

Defendants move to bar Plaintiff from providing evidence of prior citizen complaints, disciplinary records, other incidents of excessive force, lawsuits, and other alleged police misconduct. Defendants argue that this type of evidence is irrelevant, unfairly prejudicial, and

inadmissible character evidence. Plaintiff, for his part, contends that if Defendant Kelley opens the door by testifying that "his character and personal reputation are such that he could not possibly have violated" Plaintiff's rights, he should be permitted to introduce evidence of other excessive force lawsuits brought against Defendant Kelley.

Plaintiff also seeks to introduce evidence of Defendant Kelley's history of excessive force lawsuits to impeach Defendant Kelley. Plaintiff contends that Defendant Kelley lied in his answers to interrogatories. In his answers to interrogatories, Defendant Kelley identified two lawsuits that have been filed against him, but omitted four additional lawsuits that have been filed against him. Defendant Kelley admitted during his deposition that he was named in the additional lawsuits but defended the omission by asserting that he had no knowledge of the additional suits because the City has a practice of not informing its officers when they are sued. Defendants also argue that Plaintiff should not be permitted to impeach Defendant Kelley on this collateral issue.

Defendants' motion is granted in part and denied in part. To the extent that Plaintiff would like the jury to infer that because Defendant has had civil lawsuits brought against him in the past, he must have used excessive force on Plaintiff, this is an impermissible propensity inference. Additionally, impeaching Defendant Kelley by introducing the nature of these previous lawsuits would be improper and unduly prejudicial. See *United States v. Kozinski*, 16 F.3d 795, 805 (7th Cir. 1994) ("[O]ne may not impeach by contradiction regarding "collateral or irrelevant matter." (citation and internal quotation marks omitted)). Further, the presentation of evidence that each side may offer to place Defendant Kelley's omission in context would risk confusing the jurors and create an unnecessary sideshow about allegations that are not at issue in

this trial and about whether Defendant Kelley inadvertently or knowingly failed to disclose the existence of these unrelated lawsuits. See Fed. R. Evid. 403, 611.

However, Plaintiff may introduce the fact of Defendant's omission for impeachment purposes, without getting into the nature of the omitted lawsuits. This should be a very simple inquiry:

> Question: Did you state in your sworn written discovery responses in this case submitted on [date] that two lawsuits have been filed against you?
> Answer: Yes.
> Question: Isn't it true that as of that date six lawsuits actually had been filed against you?
> Answer: Yes.[4]

Additionally, if Plaintiff believes that Defendant Kelley has opened the door by putting his character at issue, Plaintiff's counsel may request a sidebar to discuss whether he may reference the nature of the previous lawsuits.

### C. Defendants' Motion No. 3 [62]: Defendant Ellison's DUI Conviction

Defendants seek to bar evidence of Defendant Ellison's DUI conviction. Plaintiff concedes that this DUI conviction is neither a felony conviction nor a misdemeanor involving fraud or dishonesty and thus agrees not to introduce it as evidence unless Defendant Ellison opens the door. Thus, Defendants' motion is granted.

### D. Defendants' Motion No. 4 [63]: DOJ Letter

Defendants seek to bar arguments relating to a January 18, 2012 letter from the U.S. Department of Justice. Plaintiff concedes that the DOJ letter is not relevant since the *Monell* claim has been bifurcated. Thus, Defendants' motion is granted.

---

[4] If Defendant Kelley wishes to explore the nature of these lawsuits in response to questions from his counsel, he may open the door to additional questioning by Plaintiff's counsel that otherwise would have been excluded.

**E.     Defendants' Motion No. 5 [64]: Indemnification and "Sending a Message"**

Defendants move to bar Plaintiff from arguing that the City will indemnify the Defendant officers, arguing that any evidence as to indemnification is irrelevant.  Plaintiffs argue that they are seeking punitive damages, and thus the jury should be informed that the City is obligated to indemnify Defendants for compensatory but not for punitive damages.

"In the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); see also *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible").  However, if a defendant who benefits from a right to indemnification nevertheless claims an inability to pay damages, the defendant is deemed to have "opened the door" to evidence of indemnification. See *Jones*, 2017 WL 413613, at *4 (explaining that in general, courts bar evidence of indemnification because it may encourage juries to inflate compensatory damages award, but allowing plaintiff to introduce evidence of the City's indemnification if Defendants open the door by presenting evidence of their financial condition); *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1030–31 (N.D. Ill. 2011) same); *Gonzalez*, 2015 WL 3671641, at *7 (same).

Thus, Defendants' motion is granted in part and denied in part.  Evidence of indemnification is inadmissible, unless Defendants open the door by bringing their personal financial circumstances into the case or suggesting any hardship on them in conducting the defense.  If Defendants choose to "apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets," then "fairness would dictate that the jury also be informed of the true situation (indemnification) as to compensatory damages."

*Galvan v. Nordberg*, 2006 WL 1343680, at *2 (N.D. Ill. May 10, 2006). Thus, if Defendants offer evidence of their financial circumstances, the Court will instruct the jury that the City indemnifies for compensatory damages, but not for punitive damages, and that the jury is to consider Defendants' financial information only for its valuation of the punitive damages, if any, that it would award in this case.

Defendants also seek to bar any reference to "sending a message" to the City or punishing the City. Defendants contend that this "sending a message" argument is an improper request for punitive damages from the City and unfairly prejudicial. Plaintiff concedes that he cannot seek punitive damages from the City but argues that he should still be able to ask the jury to "send a message" to the City.

Defendants' motion is granted in part and denied in part. Plaintiff is permitted to argue that he is attempting to deter Defendant officers and other police officers from misconduct. See *Martinez*, 2016 WL 3538823, at *14 ("[Plaintiff] may argue that punitive damages are appropriate to serve as an example to other officers that they should not do *what Defendants did in this case*[.]"); *Betts*, 784 F. Supp. 2d at 1033; *Bruce*, 2011 WL 3471074, at *6. However, any argument that he would like the "send a message" to the City implies that the City has a policy or practice of condoning such misconduct, which is not being addressed in this trial, since the *Monell* claim has been bifurcated. Therefore, Plaintiff is barred from making any argument that the jury should "send a message" to the City.

### F. Defendants' Motion No. 6 [66]: Defendant Ellison's Hearsay Statements

Defendants seek to bar any reference to certain statements allegedly made by Defendant Ellison to Plaintiff at Ingalls Hospital. In Plaintiff's September 3, 2014 deposition, Plaintiff testified that Defendant Ellison asked him, "No matter what you've done, what are you going to

do about what happened to you?", and that Defendant Ellison stated, "This is not the first time that he [sic] done this. You need to take some type of action towards it." Plaintiff further testified in his deposition: "I just took it for that. I mean, I just heard him. I can't say what he was referring to, but * * *." Defendants argue that Plaintiff's deposition testimony about Defendant Ellison's statements constitutes hearsay. Defendants also contend that the statements are vague and unfairly prejudicial and should thus be barred by Rule 403.

Plaintiff argues that Defendant Ellison's statements are not hearsay under Rule 801(d)(2). Plaintiff further contends that the statements are not ambiguous and that they plainly establish that Defendant Ellison knew of Defendant Kelley's likelihood of using force and that he felt the situation warranted Plaintiff taking action against Defendant Kelley. Defendants assert that the statements may also be interpreted to mean that Defendant Kelley "made a false statement, false arrest, false identification, malicious prosecution [sic] or any other type of slight misconduct that may be simply reported to a supervisor." Defendants contend that the statements do not mention force and thus should not be interpreted to refer to excessive force. According to Defendants, since Plaintiff did not know what Defendant Ellison was referring to even though Plaintiff as present when the statements were made, the statements are vague.

Defendants' motion is denied. A statement of a party opponent is not hearsay under Federal Rule of Evidence 801(d)(2)(A), which "provides that a statement is not hearsay and may be admitted when the statement in question is offered against a party and is the party's own statement." *United States v. Reed*, 227 F.3d 763, 769 (7th Cir. 2000). Statements admitted under Rule 801(d)(2)(A) need not be inculpatory. *Id.* Thus, Defendant Ellison's statements are not hearsay. Additionally, the statements can be interpreted to imply Defendant Ellison's awareness of some sort of prior misconduct by Defendant Kelley and are thus relevant to

Plaintiff's failure to intervene claim against Defendant Ellison. Finally, there are no false arrest or malicious prosecution allegations against Defendant Kelley, and Plaintiff does not allege that Defendant Kelley made a false statement or false identification. Given this context, the Court is not convinced by Defendants' attempt to construe Defendant Ellison's statement as overly vague or unduly prejudicial.

**G.      Defendants' Motion No. 7 [67]: Citizen Complaints about the City**

Finally, Defendants move to bar evidence regarding misconduct, citizen complaints, and allegations against non-party Harvey officers and the City. Plaintiff concedes that this motion pertains strictly to the *Monell* claim against the City. Since the Court granted Defendants' motion to bifurcate, Defendants' motion *in limine* is granted.

**IV.      Conclusion**

For the reasons set forth above, Plaintiff's motions *in limine* are granted in part and denied in part as follows: the Court grants Plaintiff's motions No. 1, 2, 4, 7, 8, and 11; the Court grants in part and denies in part Plaintiff's motions No. 3, 5, and 6; and the Court denies Plaintiff's motions No. 9 and 10. Defendants' motions *in limine* are granted in part and denied in part: the Court grants Defendants' motions No. 3 [62], 4 [63], and 7 [67]; the Court grants in part and denies in part Defendants' motions No. 1 [60], 2 [61], and 5 [64]; and the Court denies Defendants' motion No. 6 [66]. This case remains set for a jury trial to commence on April 3, 2017. The Court directs the parties to submit a revised exhibit lists that take into account the Court's rulings above no later than 12:00 p.m. (noon) on March 31, 2017.

Dated: March 28, 2017

_____
Robert M. Dow, Jr.
United States District Judge